UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARMELA BONSIGNORE, Individually, and
As Administrator of the Estate of
JESSE J. BONSIGNORE,

22cv2925 (RER)(AYS)

Date of Service: March 3, 2026

Plaintiff,

-against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, Police Officer JAMES SKIDMORE,
Individually and in his official capacity,
JOHN DOES 1-5, Individually and in their
official capacity,

Defendants.

**COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

DATED:      Hauppauge, New York
            March 3, 2026

Respectfully submitted,

Christopher J. Clayton
Suffolk County Attorney
Attorney for County Defendants
H. Lee Dennison Building
100 Veterans Memorial Highway
P. O. Box 6100
Hauppauge, New York 11788

By:  Kyle Wood
Assistant County Attorney

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

STANDARD OF REVIEW ................................................................................................... 2

STATEMENT OF FACTS .................................................................................................... 4

POINT I
PLAINTIFF CANNOT MAINTAIN HER EXCESSIVE FORCE CLAIM BECAUSE OFFICER SKIDMORE'S CONDUCT DOES NOT CONSTITUTE UNREASONABLE FORCE GIVEN THE UNDISPUTED CIRCUMSTANCES…………………………………………………...7

POINT II
THE CLAIM AGAINST OFFICER SKIDMORE FOR FALSE ARREST MUST BE DISMISSED BECAUSE PROBABLE CAUSE TO ARREST EXISTED ON MULTIPLE GROUNDS…………………………………………………………………………………12

POINT III
THERE IS NO BASIS FOR PLAINTIFF'S FABRICATION OF EVIDENCE CLAIM……….15

POINT IV
THERE IS NO EVIDENCE IN THE RECORD TO SUPPORT THE *MONELL* CLAIM ........................................................................................... 16

POINT V
DEFENDANT SKIDMORE IS ENTITLED TO QUALIFIED IMMUNITY .......................... 18

POINT VI
THE COURT SHOULD DECLINE JURISDICTION OVER PENDENT STATE CLAIMS THAT ARE DUPLICATIVE OR EXPLICITLY BARRED…………………………………23

CONCLUSION.................................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**

*Amore v. Novarro*,
  624 F.3d 522 (2d Cir. 2010) ................................................................................... 21
*Anderson v. Creighton*,
  483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)................................. 20, 22
*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ......................................................................................... 2, 3
*Antic v. City of New York*,
  740 F. App'x 203 (2d Cir. 2018)............................................................................ 21
*Ashcroft v. al-Kidd*,
  563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)............................. 18, 22
*Barnes v. Felix*,
  605 U.S. 73 (2025) ......................................................................................... 8, 9
*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*,
  520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)................................... 17
*Blot v. Town of Colonie*,
  2017 WL 61943 (N.D.N.Y. Jan. 5, 2017) ............................................................ 23
*Boyd v. City of New York*,
  336 F.3d 72 (2d Cir. 2003) ................................................................................. 14
*Boyler v. City of Lackawanna*,
  765 F. App'x 493 (2d Cir. 2019)........................................................................... 13
*Brandon v. City of New York*,
  705 F.Supp.2d 261 (S.D.N.Y. 2010) .................................................................... 16
*Castro v. County of Nassau*,
  2010 WL 3713185 (E.D.N.Y. Sept. 13, 2010) ................................................... 7, 8
*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed 2d 28 (1986)............................................ 2
*Cerrone v. Brown*,
  246 F.3d 194 (2d Cir. 2001) ............................................................................... 20
*City of Canton v. Harris*,
  489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)...................................... 17
*City of Los Angeles v. Heller*,
  475 U.S. 796 (1986) ......................................................................................... 17
*Corbett v. Firstline Security Inc.*,
  687 F.Supp.2d 124 (E.D.N.Y. Dec. 9, 2009)......................................................... 3
*Corsini v. Brodsky*,
  731 F. App'x 15 (2d Cir. 2018) ........................................................................... 13
*Creese v. City of New York*,
  2020 WL 2755698 (2d Cir. May 27, 2020)............................................................ 20
*Devenpeck v. Alford*,
  543 U.S. 146 (2004) ......................................................................................... 14

*Dickerson v. Napolitano*,
   604 F.3d 732 (2d Cir. 2010) ...................................................................... 14
*Doninger v. Niehoff*,
   642 F.3d 334 (2d Cir. 2011) ...................................................................... 23
*Donovan v. Briggs*,
   250 F.Supp.2d 242 ...................................................................................... 14
*DuFort v. City of New York*,
   874 F.3d 338 (2d Cir. 2017) ...................................................................... 16
*Edrei v. Maguire*,
   892 F.3d 525 (2d Cir. 2018) ...................................................................... 19
*Evans v. Solomon*,
   681 F. Supp. 2d 233 (E.D. N.Y. 2010) ...................................................... 8
Fernandez v. City of New York,
   457 F. Supp. 3d 364 (S.D.N.Y. 2020) ...................................................... 24
*Figueroa v. Mazza*,
   825 F.3d 89 (2d Cir. 2016) ................................................................. 20, 21
*Gallo v. Prudential Residential Services, Ltd. Partnership*,
   22 F.3d 1219 (2d Cir. 1994) .................................................................. 2, 3
*Garcia v. Does*,
   779 F.3d 84 (2d Cir. 2015) ................................................................. 19, 20
*Garnett v. Undercover Officer C0039*,
   838 F.3d 265 ............................................................................................... 15
*Graham v. Connor*,
   490 U.S., 109 S. Ct. (1989) ........................................................... 7, 8, 9, 11
*Grice v. McVeigh*,
   873 F.3d 162 (2d Cir. 2017) ...................................................................... 18
*Gutierrez v. New York*,
   2021 WL 681238 (E.D.N.Y. Feb. 22, 2021) ............................................ 13
*Hahn v. County of Otsego*,
   820 F.Supp. 54 (N.D.N.Y.1993).......................................................... 14, 15
*Harlow v. Fitzgerald*,
   457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).......................... 18
*Hartline v. Gallo*,
   546 F.3d 95 (2d Cir.2008) .......................................................................... 18
*Hope v. Pelzer*,
   536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).......................... 22
*Illinois v. Gates*,
   462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)............................... 11
*Jackson ex rel. Jackson v. Suffolk Cty.*,
   87 F. Supp. 3d 386 (E.D.N.Y. 2015) ......................................................... 21
*Jaegly v. Couch*,
   439 F.3d 149 (2d Cir. 2006) ................................................ 12, 13, 14, 21
*Jenkins v. City of New York*,
   478 F.3d 76 (2d Cir. 2007) ........................................................................ 20
*Jocks v. Tavernier*,
   316 F.3d 128 (2d Cir.2003) ........................................................................ 14

*Johns v. Dep't of Justice of U. S.,*
  624 F.2d 522 (5th Cir. 1980) ............................................................................... 18

*Johnson v. Newburgh Enlarged School Dist.,*
  239 F. 3d 246 (2d Cir. 2001) ................................................................................. 7

*Jones v. Westchester County,*
  182 F.Supp.3d 134 (S.D.N.Y. 2016) ................................................................... 16

*Keene v. Schneider,*
  350 Fed. Appx. 595 (2d Cir. Oct. 29, 2009)......................................................... 8

*Kerman v. City of New York,*
  374 F.3d 93 (2d Cir. 2004) .................................................................................. 19

*Lee v. Sandberg,*
  136 F.3d 94 (2d Cir. 1997) .................................................................................. 13

*Leogrande v. Suffolk Cnty.,*
  2016 WL 889737 (E.D.N.Y. Mar. 9, 2016).......................................................... 19

*Malley v. Briggs,*
  475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)................................. 18, 20, 22

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio, Corp.,*
  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)..................................... 2, 3

*Maxwell v. City of New York,*
  380 F. 3d 106 (2d Cir. 2004) ................................................................................. 7

*McClellan v. Smith,*
  439 F.3d 137 (2d Cir. 2006) ............................................................................. 19, 20

*McKinney v. George,*
  726 F.2d 1183 (7th Cir. 1984) ............................................................................. 13

*Messerschmidt v. Millender,*
  565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012).................................... 18

*Mitchell v. Forsyth,*
  472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).................................... 19

*Monell v. Dept. of Social Services,*
  436 U.S., 98 S.Ct. 2018 ...................................................................................... 16

*Moore v. Andreno,*
  505 F.3d 203 (2d Cir. 2007) ................................................................................ 18

*Morgan v. County of Nassau,*
  2009 WL 2882823 ................................................................................................. 7

*Mudge v. Zugalla,*
  939 F.3d 72 (2d Cir. 2019) .................................................................................. 22

*Pearson v. Callahan,*
  555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)................................. 18, 19

*Pierson v. Ray,*
  386 U.S. 547, 87 S.Ct (1967) .............................................................................. 15

Poulos v. City of N.Y.,
  14 Civ. 3023,  2015 U.S. Dist. LEXIS 131562,  2015 WL 5707496  (S.D.N.Y. Sept. 29,
  2015)...................................................................................................................... 24

*Pourkavoos v. Town of Avon,*
  823 F. App'x 53 (2d Cir. 2020)............................................................................. 19

*Reinhart v. City of Schenectady Police Dept.,*
  599 F.Supp.2d 323 (N.D.N.Y. 2009).................................................................... 14

iv

*Ricciuti v. N.Y.C. Transit Auth.*,
  124 F.3d 123 (2d Cir. 1997) ...................................................................................... 13
Richardson v. City of New York,
  2015 U.S. Dist. LEXIS 155887 (S.D.N.Y. Nov. 18, 2015)........................................ 24
*Robison v. Via*,
  821 F.2d 913 (2d Cir. 1987) ...................................................................................... 20
*Rodriguez v. Phillips*,
  66 F. 3d 470 (2d Cir. 1995) .......................................................................................... 7
*Russo v. City of Bridgeport*,
  479 F.3d 196 (2d Cir. 2007) ...................................................................................... 19
Salmon v. Blesser,
  802 F.3d 249 (2d Cir. 2015) ...................................................................................... 24
*Saucier v. Katz*,
  533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)......................................... 22
*Smith v. Town of Lewiston*,
  2022 WL 3273241 (W.D.N.Y. Aug, 11, 2022) ......................................................... 14
*Stansbury v. Wertman*,
  721 F.3d 84 (2d Cir. 2013) ........................................................................................ 13
*Tennessee v. Garner*,
  471 U.S. 1 (1985) ......................................................................................... 10, 11, 22
*Thomas v. Roach*,
  165 F.3d 137 (2d Cir. 1999) ...................................................................................... 19
*Torraco v. Port Auth. of N.Y. & N.J.*,
  615 F.3d 129 (2d Cir. 2010) ...................................................................................... 13
*Triolo v. Nassau Cty., NY*,
  2019 WL 5742623 (E.D.N.Y. Nov. 4, 2019) ............................................................ 20
*Uwadiegwu v. Dep't of Soc. Servs. of the Cty. of Suffolk*,
  639 F. App'x 13 (2d Cir. 2016)................................................................................... 17
*Vega v. Semple*,
  963 F.3d 259 (2d Cir. 2020) ...................................................................................... 19
Vivar v. City of New York,
  No. 18-CV-5987 (VSB), 2020 U.S. Dist. LEXIS 56251, 2020 WL 1505654 (S.D.N.Y. Mar. 30, 2020).................................................................................................... 24
*Weiner v. McKeefery*,
  90 F. Supp. 3d 17 (E.D.N.Y. Mar. 11, 2015) ...................................................... 19, 20
*Weyant v. Okst*,
  101 F.3d 845 (2d Cir. 1996) ...................................................................................... 13
*White v. Pauly*,
  580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017)............................................. 22
*Ying Jing Gan v. City of New York*,
  996 F.2d 522 (2d Cir. 1993) ........................................................................................ 3
*Ziglar v. Abbasi*,
  137 S. Ct. 1843, 198 L.Ed.2d 290 (2017).................................................................. 19

Statutes

42 U.S.C. §1983 ................................................................................................................. 1

Rules

*Fed. R. Civ. P. 56 (c)* ...................................................................................................... 2
Fed. R. Civ. P. 56(e) ......................................................................................................... 2
Fed. R. Civ. P. Rule 56 ..................................................................................................... 1

Other Authorities

*Castellar v. Caporale*,
   2010 WL 352284 (E.D.N.Y. Sept. 2, 2010) ............................................................. 7, 8
PL Section 35.30 ............................................................................................................. 12
PL Section 120.14(1) ................................................................................................. 12, 21
PL Section 195.05 ....................................................................................................... 12, 21
PL Section 205.30 ........................................................................................................... 12

**PRELIMINARY STATEMENT**

This Office represents defendants, County of Suffolk and Police Officer James Skidmore, in the above-referenced civil rights matter brought by Plaintiff pursuant to 42 U.S.C. §1983 and submits this memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. Rule 56 dismissing the Complaint [DE 1] ("the complaint") in its entirety.

On May 18, 2022, Plaintiff filed her complaint alleging numerous claims that her constitutional rights were violated by the defendants arising from the interaction and subsequent shooting of her father, Jesse Bonsignore. Specifically, the complaint alleges False Arrest, Fabrication of Evidence, Withholding of Evidence - Denial of Access to the Courts, Excessive Force, Deprivation of Federal Rights under 42 USC section 1983, Denial of his Rights under the ADA, and pendent state claims to include Assault, Battery, False Arrest, False Imprisonment, Abuse of Process, Intentional Infliction of Emotional Distress, Negligent Hiring, Training, Supervision, Retention, Negligence and Wrongful Death.

On December 12 2025 Plaintiff's counsel submitted correspondence to the Court in which she voluntarily withdrew the following claims: withholding of evidence or denial of access to the courts; a claim under the Americans with Disabilities Act and Rehabilitation Act; state law claims of false arrest; state law claims of false imprisonment; and state law claims of abuse of process.

As a result the Plaintiff continues to assert the following seven claims: 42 USC section 1983 for false arrest; 42 USC section 1983 for fabrication of evidence; 42 USC section 1983 for excessive force; 42 USC section 1983 municipal liability; a state law assault claim; a state law battery claim; and finally, a claim for the intentional infliction of emotional distress. [DE 54]

1

The County Defendants submit that Plaintiff cannot establish any constitutional violation occurred in this case based on the relevant and admissible facts revealed during discovery. Thus, summary judgment is warranted as there are no genuine disputes as to any material facts.

## STANDARD OF REVIEW

It is well settled that summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *Fed. R. Civ. P. 56 (c)*; *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed 2d 28 265 (1986). The trial court's task at the summary judgment stage of the litigation is limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding. It does not extend to issue resolution. *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. Once the moving party had met this burden, the non-moving party must come forward with "specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio, Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed. R. Civ. P. 56(e). The non-movant must surpass an evidentiary threshold:

> …the non-moving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party.

2

> *Matsushita*, 475 U.S. at 586.  Summary judgment is appropriate where the moving party can show that "little or no evidence may be found in support" of the non-moving party's case. *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

*Corbett v. Firstline Security Inc.,* 687 F.Supp.2d 124 (E.D.N.Y. Dec. 9, 2009). Stated alternatively, to survive a motion for summary judgment, the non-movant must do more than present evidence that is merely colorable, conclusory or speculative. *Anderson*, 477 U.S. at 249-50. The non-movant must offer evidence that demonstrates the existence of a genuine issue of material fact that must be decided by a jury. *Id.* The non-moving party must produce evidence in the record "and may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

While the complaint alleges that the named defendant police officer violated her father's civil rights, the plaintiff makes these conclusory allegations without offering facts to support such claims. In so much as defendant Police Officer Skidmore and supporting Police Officers have now been deposed, plaintiff is still unable to sustain this action where there is no genuine issue to be resolved at trial. The plaintiff cannot recover from her claims of false arrest, fabrication of evidence, and excessive force since the allegations pertaining to this alleged violation are improper conclusory legal allegations devoid of facts to support the asserted cause of action. Moreover, since the complaint fails to sufficiently establish an underlying violation of the plaintiffs' constitutional rights, any *Monell* claims against the County of Suffolk defendants should be dismissed as well. We further request the Court decline jurisdiction for any remaining state claims for the reasons set forth below.

As now explained, Plaintiff cannot point to any admissible evidence to support her claims. She therefore cannot identify any material issue of fact which a jury should consider and summary judgment to Defendants is warranted on all claims.

3

**STATEMENT OF FACTS**

All facts which the County Defendants rely upon are set forth in their Statement Pursuant to Local Civil Rule 56.1 which is incorporated herein by reference.

The general facts of the case are as follows. On May 20, 2021, at 10:15 p.m., the homeowner at 67 Bauer Avenue, Manorville, Suffolk County, New York, noticed a vehicle parked on the grass opposite his driveway. Approximately thirty minutes later, while walking his dog, the resident again passed the vehicle and saw a man sitting across the rear seat. Upon returning home, the individual called 911 to report the vehicle at 10:44 p.m. Suffolk County Police dispatch transmitted a call for service to investigate a subject lying in the back seat of a parked, abandoned vehicle (Skidmore depo., p. 83:14-25, 84:1-19). Officer James Skidmore ("Skidmore") received the call and arrived on scene at 10:49 p.m., observing the reported vehicle parked in a "No-Parking" zone (Skidmore depo., p. 89:1-5, 7-15).

On approach, Officer Skidmore observed that the vehicle did not have a front license plate or any registration (Skidmore depo., p. 90:4-7). Officer Skidmore noticed the subject lying in the back seat positioned with the front driver's seat extended backwards (Skidmore depo., p. 90:11-13). Considering the situational uncertainty at this point, Officer Skidmore made no attempt to wake the subject (Skidmore depo., p. 90:14-17). Officer Skidmore approached the rear end of the vehicle and contacted Dispatch requesting a run of the license plate credentials affixed to the vehicle (Skidmore depo., p. 90:15-18; 91:11). Officer Skidmore was positioned at the driver's side rear quarter panel when Mr. Bonsignore awoke, screaming unintelligible words that the officer could not comprehend (Skidmore depo., p. 108:1-3). Officer Skidmore tapped the window to gain Mr. Bonsignore's attention and attempted to communicate with him to get him to calm down

(Skidmore depo., p. 124:21-25). This prompted Officer Skidmore to request a back-up unit to assist on scene (Skidmore depo., p. 108:4-6).

Officer Skidmore repeatedly issued commands for Mr. Bonsignore to remain calm and he identified himself as a police officer. Police Officer Skidmore instructed him to stay seated inside the vehicle (Skidmore depo., p. 121:3-14, 127:14-16). Mr. Bonsignore stepped out of the vehicle after several moments of appearing aloof and verbally unresponsive (Skidmore depo., p. 126:8-11). At the officer's direction Mr. Bonsignore turned, placed his hands on the vehicle and initially complied (Skidmore depo., p. 134:22-25; 137:1-9). Considering the incoherent shouting as erratic and potentially threatening, Officer Skidmore was concerned for both their safety and decided to place Mr. Bonsignore in handcuffs "*for his protection and mine.*" (Skidmore depo., p. 142:6-13; 141:21-23). When Mr. Bonsignore first rose from the back seat, Officer Skidmore saw what "*appeared to be a folding knife or box-cutter*" clipped to the right side of the subject's waistband, near the belt line (Skidmore depo., p. 145:25; 146:1-13). The officer chose not to draw immediate attention to the object because, at that moment, Bonsignore had committed no crime and Officer Skidmore believed it was not safe to do so; departmental training permits an officer to defer addressing a weapon until a safe opportunity exists to secure it (Skidmore depo., p. 147:11-20).

After deciding to apply handcuffs for safety, Officer Skidmore asked whether Mr. Bonsignore had anything that could "hurt, poke, or stick" him (Skidmore depo., p. 144: 8-13). Bonsignore replied, "*just my knife*," and removed his right hand from the car as if to grasp it (Skidmore depo., p. 144:22-23). Skidmore immediately released his Taser grip, seized Bonsignore's right hand, and attempted to restrain Bonsignore by pushing up against him (Skidmore depo., p. 145:1-5, 12-14). During this struggle, Bonsignore pulled his right hand away from Officer Skidmore and threatened Officer Skidmore that he was going to kill him (Skidmore depo., p. 145:6-9). Mr.

5

Bonsignore then spun around onto Officer Skidmore and grabbed him in a bear hug, and the two men went to the ground (Skidmore depo., p. 159:17-20).

Officer Skidmore landed stomach down, on top of Mr. Bonsignore, with Mr. Bonsignore's back on the ground. While in this position, Mr. Bonsignore repeated that he was "*going to kill*" Skidmore (Skidmore depo., p. 167:16-24; 168:1-9). Officer Skidmore felt Mr. Bonsignore grab and pull on his weapon holster which was attached to his body (Skidmore depo., p. 185: 1-21). Although he was unsuccessful, Mr. Bonsignore attempted to pull the knife while the two individuals were on the ground (Skidmore depo., p. 172: 9-15). As they grappled on the ground over Officer Skidmore's weapon, Officer Skidmore was able to retrieve his weapon from his holster (Skidmore depo., p. 176:22-13). Mr. Bonsignore then grabbed Officer Skidmore's wrist on the hand holding the weapon, preventing Officer Skidmore from standing up after pulling his weapon. Because Mr. Bonsignore continued to hold his grip on Skidmore's weapon-bearing hand, Officer Skidmore was unable to get to his feet. (Skidmore depo., p. 176:22-23, 177:7-11, 17-20; 178: 1-7). Officer Skidmore freed his wrist from Bonsignore's grip, pulled back and discharged his department-issued weapon two times in Mr. Bonsignore's chest area (Skidmore depo., p. 176:11-13, 22-25; 177:17-20). Officer Skidmore then made a radio transmission that there were shots fired, and he needed rescue to respond (Skidmore depo., p. 177:1-6; 182:15-17).

In sum, although Officer Skidmore directed Jesse Bonsignore to stay in the car, Mr. Bonsignore got out and had a folding knife (which was later recovered) on his waistband. During a pat-down search, Officer Skidmore saw Jesse Bonsignore reach for his knife. Officer Skidmore attempted to handcuff the decedent to prevent him from grabbing his knife. However, Jesse Bonsignore resisted being handcuffed, and grabbed Officer Skidmore in a bear hug and they both fell to the ground in a struggle. Officer Skidmore felt Mr. Bonsignore pull on his gun holster

6

several times during the struggle on the ground, and he tried to control Mr. Bonsignore's arms to prevent him from taking his gun. Eventually Mr. Bonsignore grabbed the wrist of Officer Skidmore's gun hand while he was trying to secure the weapon. Officer Skidmore was able to pull his firearm and fired two shots, striking Mr. Bonsignore, who died on scene.

## POINT I

**PLAINTIFF CANNOT MAINTAIN HER EXCESSIVE FORCE CLAIM BECAUSE OFFICER SKIDMORE'S CONDUCT DOES NOT CONSTITUTE UNREASONABLE FORCE GIVEN THE UNDISPUTED CIRCUMSTANCES**

Where the force is utilized in the course of an arrest, investigatory stop or other seizure of the person, the governing standard is that embodied within the prohibition of unreasonable searches and seizures of the 4th Amendment. *Graham*, 490 U.S. at 395, 109 S. Ct. at 1871 (1989). In distinction, where force is applied against one who is not being seized or in custody, it is the substantive due process guarantee of the 14th Amendment which controls. *Johnson v. Newburgh Enlarged School Dist.*, 239 F. 3d 246, 253 (2d Cir. 2001); *Rodriguez v. Phillips*, 66 F. 3d 470, 476-77 (2d Cir. 1995).

Under the search and seizure clause, force is impermissible if it is merely unreasonable. Notwithstanding, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ... violates the Fourth Amendment. *Johnson,* 481 F.2d at 1033 (2d Cir.1973). An application of force is excessive under the 4th Amendment only if "it is objectively unreasonable 'in light of the facts and circumstances confronting [the police], without regard to their underlying intent or motivation'." *Maxwell v. City of New York*, 380 F. 3d 106, 108 (2d Cir. 2004) quoting, *Graham v. Connor,* 490 U.S. at 397 (1989). Accord, *Castro v. County of Nassau*, 2010 WL 3713185 (E.D.N.Y. Sept. 13, 2010); *Castellar v. Caporale*, 2010 WL 352284 (E.D.N.Y. Sept. 2, 2010); *Morgan v. County of Nassau*, 2009 WL 2882823 E.D.N.Y.(Sept. 2, 2009). The

7

touchstone of the inquiry is reasonableness. *Evans v. Solomon*, 681 F. Supp. 2d 233, 252 (E.D. N.Y. 2010).

Determining whether the force used to affect a particular seizure is 'reasonable' under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Castro v. County of Nassau*, 2010 WL 3713185 * 15 (E.D.N.Y. Sept. 13, 2010) quoting *Graham,* 490 U.S. at 396. Reasonableness is measured from the eyes of a reasonable police officer on the scene of the incident. *Castellar,* 2010 WL 352284 *15 (E.D.N.Y. Sept. 2, 2010). When we examine an officer's use of force, we must make "allowance[s] for the fact that the police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham v. Connor,* 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). *Keene v. Schneider*, 350 Fed. Appx. 595 *2 (2d Cir. Oct. 29, 2009).

When viewed even under the more prohibitive 4th Amendment standard, Officer Skidmore's conduct does not amount to constitutionally excessive force. The level of force utilized was a response to the officer's belief that deadly force was about to be used against him. All objective facts and supporting evidence including statements and video reveal that the decedent had (1) physically assaulted the officer, (2) told him he was going to kill him and (3) attempted to take his firearm from him during a life and death struggle.

In the recent Supreme Court decision in *Barnes v. Felix*, 605 U.S. 73 (2025) the Court issued a unanimous decision emphasizing that the Fourth Amendment's "totality of the circumstances" inquiry into a police officer's use of deadly force "has no time limit." (Id. at 73) The Court recognized that although "the situation at the precise time of the shooting will often be

what matters most," "earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." (*Id*. at 80) The Court emphasized the importance of considering the entirety of the encounter, explaining that, "prior events may show, for example, why a reasonable officer would have perceived otherwise ambiguous conduct of a suspect as threatening. Or instead, they may show why such an officer would have perceived the same conduct as innocuous. The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force." By rejecting the Fifth Circuit's "moment-of-threat" rule, the Court reaffirmed that *Graham v. Connor* demands a context-specific analysis. (*Id*. at 80)

Based on the evidence presented in this investigation including witness testimony and video, Police Officer Skidmore's use of deadly physical force was justified under the law. When Office Skidmore awakened Mr. Bonsignore, the decedebnt started screaming and said, "I'm going to kill you." Officer Skidmore radioed for backup and told Mr. Bonsignore to stay in the car. Despite that direction, Mr. Bonsignore got out of his car with a folding knife on his waistband. Mr. Bonsignore said, again, "I'm going to kill you." Officer Skidmore tried to avoid a physical confrontation with Mr. Bonsignore by asking him to stay in the car and calling for help when Mr. Bonsignore started screaming. Mr. Bonsignore escalated matters by getting out of the car and repeating "I'm going to kill you," all while having a knife on his waistband and reaching for it while Officer Skidmore did a pat down search. The decedent then proceeded to resist being handcuffed, grabbed the officer in a bear hug and took him to the ground.

Based on the facts collected during discovery, there is no evidence in the admissible record to support the allegations in the complaint that Police Officer Skidmore used excessive force during his interaction with Mr. Bonsignore. Law enforcement officers encounter life

9

threatening situations and events involving interactions with individuals who possess weapons and may use those weapons against the law enforcement officers or civilians or both. Law enforcement officers are trained that when they are faced with the threat of serious bodily injury or death—or that they reasonably perceive such a threat—they are justified in responding with the use of deadly force. In the case of *Tennessee v. Garner* (471 U.S. 1 (1985)) "deadly force may not be used unless it is necessary to prevent an escape and the officer has probable cause to believe that the subject possesses a significant threat of death or serious physical injury to the officer or others." As a result, established precedent makes it clear that when the threat of serious bodily harm or death is perceived reasonably to be of an imminent nature—as is present in this matter—the law enforcement officer may immediately use deadly force to repel that threat.

Officer Skidmore was not indifferent to the rights of Jesse Bonsignore in how he responded to the threat of serious physical injury or death during the incident. Officer Skidmore's actions, and the amount of force used, were reasonable considering the totality of the circumstances surrounding the incident. Deadly force encounters are judged from the perspective of a reasonable officer on the scene, based on the facts and circumstances known to and confronting the officer at that time.

The Court's analysis must include a review of the Plaintiff's intent, opportunity, and ability, based on Officer Skidmore's perception of the totality of the circumstances, as it unfolded. It is clear from the objective facts that Mr. Bonsignore presented a perceived deadly threat to Officer Skidmore in that (1) Mr. Bonsignore had a knife in the waistband of his pants, (2) repeatedly threatened to kill Officer Skidmore, (3) turned and grabbed Officer Skidmore in a bear hug, and (4) grabbed and pulled on the holster holding the officer's weapon, and therefore, had the ability and opportunity to harm him. Mr. Bonsignore's refusal to keep his hands on the roof of the car, as instructed by Officer

10

Skidmore, and his repeated statements that he was going to kill the officer, indicated a perceived intent to harm Officer Skidmore.

Under the Fourth Amendment, law enforcement officers may use only such force as is objectively reasonable under the circumstances. *See, e.g., Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *See, e.g., Tennessee v. Garner,* 471 U.S. 1, 3, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *see also Illinois v. Gates,* 462 U.S. 213, 230–32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (existence of probable cause is to be determined on the basis of the totality of the circumstances).

All of the objective evidence that has been elicited during discovery revealed Officer Skidmore had no opportunity to retreat or pause from Mr. Bonsignore during his interaction with him on the date of incident. From the time that Officer Skidmore appeared at the scene to investigate the parked vehicle, he was forced to immediately react to Mr. Bonsignore. Mr. Bonsignore began by screaming at him from the vehicle, refused directions to stay in the vehicle and, tellingly, once he stepped out of the vehicle made it impossible for Police Officers Skidmore to disengage from Mr. Bonsignore. Mr. Bonsignore thereafter initiated a physical struggle with Police Officers Skidmore and attempted to grab his service weapon. Defendant Skidmore was left with no opportunity but to use the force that was necessary to protect himself from the imminent

11

use of deadly force against him. Based on the foregoing, Plaintiff's claims as to excessive force fail as a matter of law. Thus, the excessive force claim must be dismissed.

## POINT II

**THE CLAIM AGAINST OFFICER SKIDMORE FOR FALSE ARREST MUST BE DISMISSED BECAUSE PROBABLE CAUSE TO ARREST EXISTED ON MULTIPLE GROUNDS**

As stated above, an individual called 911 to report a vehicle parked across from his house at 10:44 p.m. on the date of incident. Suffolk County Police dispatch transmitted a call for service to investigate a subject lying in the back seat of a parked, abandoned vehicle (Skidmore depo., p. 83:14-25, 84:1-19). Officer Skidmore received the call and arrived on scene at 10:49 p.m., observing the reported vehicle parked in a "No-Parking" zone (Skidmore depo., p. 89:1-5, 7-15).

On approach, Officer Skidmore observed that the vehicle did not have a front license plate or any registration (Skidmore depo., p. 90:4-7). Officer Skidmore noticed the subject lying in the back seat positioned with the front driver's seat extended backwards (Skidmore depo., p. 90:11-13). At a minimum concerning any false arrest claim, these facts gave Officer Skidmore probable cause to arrest Mr. Bonsignore for vehicle and traffic infractions including but not limited to parking in a no parking zone, no registration and no front license plate. Moreover, the subsequent acts by Mr. Bonsignore where he refused to be handcuffed and initiated a physical confrontation with officer Skidmore provide the probable cause for charging Resisting Arrest , PL Section 205.30, Menacing in the Second Degree, PL Section 120.14(1) and Obstructing Governmental Administration in the Second Degree, PL Section 195.05. Probable cause to arrest on an unrelated or lesser-included charge negates a false arrest claim. *Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006).

Further under New York PL Section 35.30, Officer Skidmore could use the physical force he reasonably believed to be necessary to effectuate the arrest and could use deadly force if he

12

reasonably believed it was necessary to defend himself against Mr. Bonsignore's imminent use of deadly force. Probable cause to arrest, as existed here, is a complete defense against a claim for false arrest. *Boyler v. City of Lackawanna*, 765 F. App'x 493, 496 (2d Cir. 2019); *Corsini v. Brodsky*, 731 F. App'x 15, 18 (2d Cir. 2018); *Gutierrez v. New York*, 2021 WL 681238, at *6 (E.D.N.Y. Feb. 22, 2021) citing *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010). "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

This principle holds true even where the criminal complaint later turns out to be untrue. *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997)(citing *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984)). Moreover, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997). Defendant officers are not required to explore and eliminate every plausible claim of innocence prior to making an arrest. *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006).

Turning to the elements of a false arrest claim, to establish a false arrest claim a plaintiff must allege facts to show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (alteration in the original) (internal quotation marks and citation omitted). The existence of probable cause to arrest "is a complete defense to an action for false arrest," *Id.* at 852 (internal quotation marks omitted). The Second Circuit has held that "a claim for false arrest turns only on

13

whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006), *citing Devenpeck v. Alford*, 543 U.S. 146 (2004).

The focus is on the validity of the arrest not the validity of the charge. *Id*. The relevant inquiry is not whether the officer's error in drafting the charge was a reasonable mistake, it is whether the "arrest--*for any offense*--was supported by probable cause." *Smith v. Town of Lewiston*, 2022 WL 3273241 at \*5 (W.D.N.Y. Aug, 11, 2022) (emphasis in original), *citing Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010) "[P]robable cause is based on the facts warranting arrest and not the statute pursuant to which a plaintiff was charged. That the actual charges were brought under a different statute does not defeat a finding of probable cause"]. A plaintiff is not entitled to damages under §1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest. *Jaegly*, 439 F.3d at 154.

The standard for probable cause is not as stringent as that necessary for a conviction after trial and a probable cause determination need not be based entirely upon non-hearsay facts. *Donovan v. Briggs*, 250 F.Supp.2d 242 at 253, quoting *Jocks v. Tavernier*, 316 F.3d 128 at 135 (2d Cir.2003). "It is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment." *Hahn v. County of Otsego*, 820 F.Supp. 54, 55 (N.D.N.Y.1993), aff'd, 52 F.3d 310 (2d Cir.1995). Ultimately probable cause is based upon these logical probabilities, not absolute certainty. *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003); *Reinhart v. City of Schenectady Police Dept.*, 599 F.Supp.2d 323, 328 (N.D.N.Y. 2009) "In

14

fact, the eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn*, *supra* (citing *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct 1212 (1967)).

Based on the foregoing facts collected during discovery and contained in Defendants' Rule 56.1 Statement which is incorporated herein by reference in further detail, it is without question that probable cause existed for Plaintiff's arrest.

## POINT III

## THERE IS NO BASIS FOR PLAINTIFF'S FABRICATION OF EVIDENCE CLAIM

In the complaint, Plaintiff brings a claim for alleged "fabricated evidence," claiming that Defendants falsified records, fabricated evidence and withheld evidence as it relates to the incident involving decedent, which constituted violations of his constitutional rights. *See* DE 1, ¶ 51-53

### *Fabrication of evidence*

"[F]air trial claims based on fabrication of information [are restricted] to those cases in which an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.

In order to succeed on a claim of fabrication of evidence against a police officer it must be based on an allegation that the officer falsified information. Plaintiff must prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision. These requirements all provide necessary limits on the reach of a denial of a fair trial claim based on false information." *Garnett v. Undercover Officer C0039*, 838 F.3d 265. 279-80 (2d Cir. 2016) (internal citations omitted). Further, "[m]ere attempts to withhold or falsify evidence cannot form the basis

15

of a § 1983 claim for violation of the right to due process when those attempts have no impact on the conduct of a criminal trial." *DuFort v. City of New York*, 874 F.3d 338, 355 (2d Cir. 2017).

In the instant case, there is not one scintilla of evidence to establish that any investigating official fabricated information. As detailed in the Defendant's 56.1 Statement of Material Facts, none of the above referenced precedent is applicable to this matter. Thus, Plaintiff's claim is based on conclusory allegations of fabrication of evidence and cannot survive summary judgment.

## POINT IV

## THERE IS NO EVIDENCE IN THE RECORD TO SUPPORT THE *MONELL* CLAIM

A municipality cannot be vicariously liable under § 1983 for their employees' acts. *Monell v. Dept. of Social Services*, 436 U.S. at 694–95, 98 S.Ct. 2018. Municipalities are only liable for constitutional deprivations resulting from a governmental policy or custom. *Id*. at 694, 98 S.Ct. 2018. No evidence has been collected during discovery to establish an underlying violation of Plaintiff's constitutional rights and a County custom, policy or practice that proximately caused it. *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978).

A plaintiff may demonstrate such a policy or custom exists by introducing evidence of one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Jones v. Westchester County*, 182 F.Supp.3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F.Supp.2d 261, 276–77 (S.D.N.Y. 2010).

16

Moreover, a plaintiff must show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation" he or she suffered. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 406–07, 117 S. Ct. 1382, 1389–90, 137 L. Ed. 2d 626 (1997). The Supreme Court has held that "quite apart from the state of mind required to establish the underlying constitutional violation…a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. *Bd. of Cty. Comm'rs of Bryan Cty Id.,* at 406, *citing City of Canton v. Harris*, 489 U.S. 378, at 388, 389.

It is well-settled that a municipality cannot be held liable for damages in an action brought pursuant to § 1983 when there is no underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986). In the instant case, there are no facts within the available record sufficient to establish Plaintiff's claimed constitutional violations. Without a viable claim establishing a violation of Plaintiff's constitutional rights, there can be no claim for municipal liability.

Additionally, Plaintiff has no evidence of a County policy, custom or practice that led to or was the proximate cause of any alleged constitutional violation. Plaintiff's allegations of *Monell* liability are entirely conclusory with no evidence collected during discovery to support them and thus cannot survive summary judgment. *Uwadiegwu v. Dep't of Soc. Servs. of the Cty. of Suffolk*, 639 F. App'x 13, 15–16 (2d Cir. 2016).

17

## POINT V

## DEFENDANT SKIDMORE IS ENTITLED TO QUALIFIED IMMUNITY

In the alternative, even if the Court finds evidence to overcome Defendant Skidmore's motion on the grounds set forth above, he is nevertheless protected from §1983 liability by the principle of qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).

"A police officer is entitled to qualified immunity if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo,* 546 F.3d 95, 102 (2d Cir.2008).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 1244–1245, 182 L. Ed. 2d 47 (2012) quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011). The qualified immunity standard is forgiving. *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) quoting *Johns v. Dep't of Justice of U. S.*, 624 F.2d 522, 530 (5th Cir. 1980). Both the Supreme Court and the Second Circuit have emphasized that "[n]ormally, it is only the 'plainly incompetent or those who knowingly violate the law'—those who are not worthy of the mantle of the office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno*, 505 F.3d 203, 214 (2d Cir. 2007) quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

18

The doctrine's purpose has been described as "balanc[ing] two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020)(quoting *Pearson*, 129 S. Ct. at 815.) As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' " *Leogrande v. Suffolk Cnty.*, 2016 WL 889737, at *5 (E.D.N.Y. Mar. 9, 2016)(citing *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006)(quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)); *Pourkavoos v. Town of Avon*, 823 F. App'x 53 (2d Cir. 2020)(quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866, 198 L.Ed.2d 290 (2017)). Thus, qualified immunity is "not simply a bar on liability but also an "entitlement not to stand trial or face the burdens of litigation." *Edrei v. Maguire,* 892 F.3d 525, 535 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 2614, 204 L. Ed. 2d 263 (2019) quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

Qualified immunity is available in two different situations: where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015)(quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

As stated above, the §1983 claim of false arrest turns on the existence of probable cause. In this regard, the issue of "reasonableness" for purposes of determining probable cause is distinct from the issue of "reasonableness" for purposes of qualified immunity. *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 38–39 (E.D.N.Y. Mar. 11, 2015)(citing *Kerman v. City of New York*, 374 F.3d 93, 116 (2d Cir. 2004)). The Supreme Court has recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and

19

we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).

As defined by the Second Circuit, the standard for qualified immunity purposes is one of so-called "arguable probable cause." A police officer is entitled to qualified immunity if there was at least "arguable probable cause" at the time the officer arrested the plaintiff. *Creese v. City of New York*, 2020 WL 2755698, at *1 (2d Cir. May 27, 2020) quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Arguable probable cause exists where it was objectively reasonable for the officer to believe that probable cause existed or officers of reasonable competence could disagree on whether the probable cause test was met. *Garcia*, 779 F.3d at 92.

Stated alternatively, arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law. *Weiner v. McKeefery*, 90 F. Supp. 3d 17 (E.D.N.Y. 2015) citing *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001). An "arresting officer is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show ... that officers of reasonable competence could disagree on whether the probable cause test was met." *McClellan*, 439 F.3d at 147 quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987). "Put another way, an arresting officer will find protection under the defense of qualified immunity unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Triolo v. Nassau Cty., NY*, 2019 WL 5742623, at *5 (E.D.N.Y. Nov. 4, 2019) quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) (citing *Malley*, 475 U.S. at 342 (internal quotations omitted).

20

The courts examine the information possessed by officials at the time of their conduct without regard to the "subjective intent, motive or beliefs of the officer." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). See also *Jackson ex rel. Jackson v. Suffolk Cty.*, 87 F. Supp. 3d 386 (E.D.N.Y. 2015). As long as the officer's judgment is not "so flawed that no reasonable officer would have made the same choice," the officer is not subject to liability for false arrest and is granted qualified immunity. *Amore*, 624 F.3d at 531. In assessing arguable probable cause, the inquiry is "whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful." *Antic v. City of New York*, 740 F. App'x 203, 205 (2d Cir. 2018) quoting *Figueroa*, 825 F.3d at 100.

Officer Skidmore received the dispatch call and arrived on scene observing the reported vehicle parked in a "No-Parking" zone (Skidmore depo., p. 89:1-5, 7-15). Officer Skidmore observed that the vehicle did not have a front license plate or any registration (Skidmore depo., p. 90:4-7). Concerning any false arrest claim, these facts gave Officer Skidmore probable cause to arrest Mr. Bonsignore for vehicle and traffic infractions including but not limited to (1) parking in a no parking zone (2) no registration or (3) no front license plate. Moreover, the subsequent acts by Mr. Bonsignore where he refused to be handcuffed and initiated a physical confrontation with officer Skidmore provide the probable cause for charging (4) Menacing in the Second Degree, PL Section 120.14(1) and (5) Obstructing Governmental Administration in the Second Degree, PL Section 195.05. Probable cause to arrest on even an unrelated or lesser-included charge negates a false arrest claim. *Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006).

Likewise, Defendant Skidmore is entitled to qualified immunity against Plaintiff's remaining §1983 claims since it is obvious they did not abridge any clearly established rights due him. Undoubtedly, a citizen's Fourth Amendment right to be free of false arrest and excessive

21

force under the law are clearly established. However, for qualified immunity purposes, the relevant inquiry is whether a defendant should have known that the particular actions complained of violated that right. *White v. Pauly*, 580 U.S. 73, 79, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463, 468 (2017) quoting *Ashcroft*, 563 U.S. at 742 ("…it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' ").

This is because qualified immunity operates "'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.' " *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) quoting *Saucier v. Katz*, 533 U.S. 194, 206, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The defense is unavailable only where the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.  See *Mudge v. Zugalla*, 939 F.3d 72 (2d Cir. 2019) quoting *Anderson*, 483 U.S. at 640.

Under Supreme Court precedent, it is well established that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The facts are undisputed that an apparent threat existed in this case, and therefore, even taking the evidence in the light most favorable to Mr. Bonsignore, it was not clear that Officer Skidmore's should have reasonably understood that his use of deadly force violated the Fourth Amendment.

When Officer Skidmore used deadly force against Mr. Bonsignore it was objectively reasonable for him to view the use of deadly force as not excessive in the circumstances presented to him. The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct.

22

1092, 1096, 89 L.Ed.2d 271 (1986). The Supreme Court has made it clear that an officer's actions are not to be assessed with 20/20 hindsight. Rather, "qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances." *Lennon,* 66 F.3d at 424.

On the facts submitted in Defendant's 56.1 Statement, Officer Skidmore fired his weapon when Mr. Bonsignore was actively resisting arrest, wrestled with him on the ground and attempted to grab his service weapon. Officer Skidmore fired his weapon in reaction to the locked struggle he was in with Mr. Bonsignore for the gun. This struggle created the very real possibility that Mr. Bonsignore might gain control of the officer's weapon imminently, creating the obvious danger. In such circumstances, no rational jury could find that Officer Skidmore's decision to use deadly force "was so flawed that no reasonable officer would have made a similar choice." *Lennon,* 66 F.3d at 425.

Furthermore, clarity is determined from the standpoint not of a trained legal professional but from the eyes of the government official. *Doninger v. Niehoff*, 642 F.3d 334, 346 (2d Cir. 2011)("[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct").

## POINT VI

### THE COURT SHOULD DECLINE JURISDICTION OVER PENDENT STATE CLAIMS THAT ARE DUPLICATIVE OR EXPLICITLY BARRED

The Court should decline exercising jurisdiction over the remaining state claims. The state law assault and battery claims are redundant to the excessive force claim, and should be dismissed on that ground alone, *Blot v. Town of Colonie*, 2017 WL 61943, at *22 (N.D.N.Y. Jan. 5, 2017)

23

With respect to the intentional infliction of emotional distress claim, "New York law explicitly bars recovery for negligent or intentional infliction of emotional distress when such claims are based on conduct that is 'embraced by a traditional tort remedy." Richardson v. City of New York, 2015 U.S. Dist. LEXIS 155887 (S.D.N.Y. Nov. 18, 2015) (quoting Poulos v. City of N.Y., 14 Civ. 3023, 2015 U.S. Dist. LEXIS 131562, 2015 WL 5707496 at *10 (S.D.N.Y. Sept. 29, 2015)). See also Fernandez v. City of New York, 457 F. Supp. 3d 364 (S.D.N.Y. 2020). "Intentional and negligent infliction of emotional distress are torts that 'may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not.'" Vivar v. City of New York, No. 18-CV-5987 (VSB), 2020 U.S. Dist. LEXIS 56251, 2020 WL 1505654, at *16 (S.D.N.Y. Mar. 30, 2020) (quoting Salmon v. Blesser, 802 F.3d 249, 256-57 (2d Cir. 2015)). "As a result, all four New York State Appellate Division courts have held that such claims may never be brought when the challenged conduct falls well within the ambit of other traditional tort liability." Id.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendants' motion for summary judgment pursuant to Rule 56 dismissing the complaint in its entirety.

Dated:   Hauppauge, New York
             March 3, 2026

CHRISTOPHER J. CLAYTON
Suffolk County Attorney
Attorney for County Defendants
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788

By:   /s/ Kyle Wood
        Kyle Wood
        Assistant County Attorney

24

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARMELA BONSIGNORE, Individually, and
As Administrator of the Estate of
JESSE J. BONSIGNORE,

                                  22cv2925 (RER)(AYS)

                     Plaintiff,             **CERTIFICATION**

         -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, Police Officer JAMES SKIDMORE,
Individually and in his official capacity,
JOHN DOES 1-5, Individually and in their
official capacity,

                     Defendants.

       In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and with Judge Reyes Individual Practices, the undersigned certifies that the word count in Defendants' Memorandum of Law, as established using the word count on the word-processing system used to prepare it, was seven thousand eight hundred and thirty (7,830) words.

DATED:     Hauppauge, New York
           March 3, 2026

                          Respectfully submitted,
                          Christopher J. Clayton
                          Suffolk County Attorney
                          Attorney for County Defendants
                          H. Lee Dennison Building
                          100 Veterans Memorial Highway
                          P. O. Box 6100
                          Hauppauge, New York 11788
                          By:  Kyle Wood
                          Assistant County Attorney